IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN SHOTT, | ) |
| Plaintiff, | ) |
| v. | ) No. 15 C 4863 |
| ROBERT S. KATZ, | ) Judge Virginia M. Kendall |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Susan Shott initiated this action pursuant to 42 U.S.C. § 1981, alleging that her colleague and personal physician, Defendant Robert Katz, unlawfully retaliated against her after she sued their mutual employer, Rush University Medical Center, for discrimination and retaliation based on her Jewish ancestry. Specifically, Shott's single-count complaint contends that upon learning of Shott's lawsuits against Rush, Katz refused to co-author medical articles with her and stopped providing her medical care as her primary physician. Katz now moves to dismiss the complaint against him pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Specifically, Katz argues that Shott cannot bring a claim for retaliation under § 1981 against him because there was no employment or contractual relationship between them and he was not a decision-maker with respect to her employment with Rush. Additionally, Katz suggests that Shott may be barred from bringing a claim under § 1981 fundamentally, arguing that Shott was not born Jewish.[1] Finally, Katz moves to strike certain paragraphs of the

---

[1] Ethnically Jewish people "are not foreclosed from stating a cause of action against other members of what today is considered to be part of the Caucasian race." *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987). The

complaint as immaterial pursuant to Federal Rule of Civil Procedure 12(f). The Court concludes that Shott's complaint fails to allege the type of employment, contractual, or decision-making relationship needed to sustain a Section 1981 claim or that Katz interfered with Shott's employment relationship with Rush. The Court therefore grants the motion to dismiss[2] (Dkt. No. 18) and dismisses Shott's complaint without prejudice. Shott may amend her complaint in accordance with this order, if she is able, by November 16, 2015. The Court additionally denies Katz' motion to strike certain allegations in Shott's complaint.

## **BACKGROUND**

The Court takes the following facts from Shott's complaint and treats them as true for purposes of this motion. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

Shott is an Associate Professor and statistician in the Internal Medicine Department of the Rush Medical College at the Rush University Medical Center. She has been a faculty member at Rush since 1982. (Dkt. No. 1, Compl. ¶2.) While the precise contours of Shott's employment at Rush are not explicitly explained in her complaint, an important component of her work involves collaborating with physicians to conduct and publish medical research. (*Id.* at ¶ 22.) Shott does not allege in the complaint that Rush physicians are under contractual obligation to work with her in this capacity. Still, she states—and the Court accepts for the purpose of the instant motion—that publication is important for the career advancement of faculty members, and that she "cannot conduct and publish medical research without the collaboration of physicians." (*Id.*)

---

parties hotly dispute whether Shott was born Jewish. Because the Court views all facts in the light most favorable to Shott at this stage. it denies this basis for the motion to dismiss.

[2] In her response, Shott adamantly maintains that she is not levying a medical malpractice claim against Katz. The Court therefore does not address the potential of a medical malpractice claim as raised in Katz' motion.

Katz is a physician at Rush and a Full Professor in the Internal Medicine Department of the Rush Medical College. (*Id.* at ¶ 3.) He has been on the faculty of the medical college since 1976, and has been a Senior Attending at the hospital since 1994. (*Id.* at ¶¶ 3–4.) Shott and Katz interacted with each other in two capacities prior to commencement of this lawsuit. First, from 1994 to May 2015, Katz was Shott's physician and provided medical care for her rheumatoid arthritis, pulmonary hypertension, and a number of other conditions. (*Id.* at ¶ 45.) In addition, as colleagues at Rush, they collaborated on medical research periodically for about sixteen years—in 1997 and again during the period of 1999 to June 2014. (*Id.* at ¶ 12.)

Shott alleges that Katz' retaliatory behavior began in 1998. (*Id.* at ¶ 14.) The year before, the two had coauthored a research article. (*Id.* at ¶ 13.) After submitting the paper for publication in 1997, Katz told Shott that he appreciated her work and hoped to continue collaborating with her in the future. (*Id.*) Soon after, in early 1998, the two met to discuss their research. (*Id.* at ¶ 14.) At that meeting, Katz informed Shott that he had learned of her lawsuit against their employer, Rush, alleging anti-Jewish discrimination including bigoted statements by a number of Rush administrators. (*Id.*) When Shott explained what the administrators had said, Katz allegedly told her that "it was not a good idea to complain about remarks . . . because the Rush administration didn't like those kinds of complaints." (*Id.*) The case, *Shott v. Rush-Presbytarian* (No. 94 C 6783 (N.D. Ill.)) ("*Shott v. Rush I*"), went to trial in 1999 and 2000, with jury verdicts in Shott's favor on both occasions. (Compl. ¶ 19.)

Following their conversation in early 1998, Shott alleges that Katz "retaliated against [her] . . . by refusing to do research with her until about 1999." (*Id.* at ¶ 15.) When he did resume working with her, she claims his allegedly retaliatory behavior continued in part—while he provided her with data to analyze and coauthored short "research abstracts" with her, he was

unwilling to coauthor or publish any full-length research papers. (*Id.* at ¶ 24.) From 1999 to June 2014, Shott claims she repeatedly asked Katz to publish articles with her, but that he denied or deflected all of her requests. (*Id.* at ¶¶ 27–34.)

After the conclusion of *Shott v. Rush I* in 2000, Shott claims that Rush continued its discrimination against her. (*Id.* at ¶ 19.) For nearly eleven years, Shott attempted to resolve the issue internally at Rush, but failed. (*Id.*) In September 2011, she filed a second lawsuit against the hospital, alleging discrimination and retaliation under § 1981. (*Id.*) Among the allegations in that case, Shott claimed that "the Rush administration put pressure on Rush researchers to discourage them from publishing articles with Shott." (*Id.* at ¶ 21.) The case, *Shott v. Rush University Medical Center* (No. 11 C 50253 (N.D. Ill.)) ("*Shott v. Rush II*"), is currently pending.

Prior to 2013, Shott had not informed anyone at Rush that Katz was her physician, nor had she told Katz of her second lawsuit against Rush. (Compl. ¶ 52.) During discovery for *Shott v. Rush II*, Rush asked Shott to disclose the name of her current physician. (*Id.*) In May 2013, she called Katz, told him of the new suit, and informed him that Rush was seeking to depose him. (*Id.*) Katz became very upset, saying that he did not want to become involved in the case and that he was worried that Rush would learn he was her physician. (*Id.*) In August 2013, the court ordered Shott to disclose the name of her physician. (*Id.* at ¶ 56.) Katz was deposed in November 2013. ( *Id.* at ¶¶ 56–57.)

After Katz learned of and became involved in *Shott v. Rush II* in May 2013, Shott alleges he retaliated against her by altering his medical care toward her in a way that caused her great distress and seriously threatened her health. (*Id.* at ¶ 77.) In June 2013, when she contacted him to refill her prescriptions, she alleges that it "was difficult to reach him." (*Id.* at ¶ 53.) Shott

claims that Katz had always responded promptly to her phone calls and emails before, and would sometimes call the pharmacy while she was on the phone. (*Id*.) Yet in 2013, it took over a week to fill her prescriptions. (*Id.* at ¶¶ 53–55.) One year later, when it came time to renew her prescriptions, she states that Katz was "reluctant" to fill her prescriptions. (*Id.* at ¶ 59.) In late March 2015, Shott again contacted Katz for a prescription refill. (*Id.* at ¶ 60.) Katz a full month to respond to Shott's request. (*Id.* at ¶¶ 60–64.) During this time, Shott claims to have suffered a number of severe symptoms as a result of lowering her doses to make the prescriptions last. (*Id.* at ¶ 65.) In May 2015, Shott informed Katz that she would no longer be his patient and was seeking new physicians for medical treatment. (*Id.* at ¶ 72.)

It is not clear from the complaint precisely what the working relationship between Shott and Katz was directly after Katz learned of *Shott v. Rush II*, but Shott states that Katz continued to "refuse" to publish articles with her. (*Id.* at ¶¶ 24, 34.) In June 2014, after Shott had filed a Response to Rush's Motion for Summary Judgment in *Shott v. Rush II*, in which she alleged that Katz had refused to publish articles with her, she states that he "escalated his retaliation . . . by suddenly refusing to do any research with her."(*Id.* at ¶¶ 35–36.)

## LEGAL STANDARD

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Katz moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive dismissal, Shott's complaint must provide enough factual information to "state a claim to relief that is plausible on its face." *See Defender Sec. Co. v. First Mercury Ins. Co.*, No. 14-1805, 2015 WL 5692516, at *6 (7th Cir. Sept. 29, 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content

5

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court draws all reasonable inferences and construes all facts in the light most favorable to the plaintiff. *See Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). The Court construes the complaints of pro se plaintiffs liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## **DISCUSSION**

Shott asserts that Katz violated 42 U.S.C. § 1981 by retaliating against her after she sued their mutual employer, Rush, for disparate treatment in *Shott v. Rush I* and *Shott v. Rush II*. In pertinent part, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, [and] to sue . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). Section 1981 authorizes claims for retaliation where "one person takes action against another for asserting the right to substantive contractual equality[.]" *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008)). "[U]nlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination." *Bray*, 681 F.3d at 896 (citation and internal quotation marks omitted).

Additionally, there is a "necessary overlap" of the contract rights protected by § 1981 and the employment rights guarded by Title VII of the 1964 Civil Rights Act. *See* 42 U.S.C. § 2000e–3(a); *CBOCS*, 553 U.S. at 455 (remedies available under Title VII and Section 1981 related). Courts therefore "apply the same elements to retaliation claims under Title VII and § 1981." *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009).

A plaintiff may establish a claim for unlawful retaliation by either the direct or indirect method of proof. *See id.* at 786. "Under the direct method, [Shott] must show that (1) [she]

6

engaged in a statutorily protected activity; (2) [she] suffered a materially adverse action by her employer; and (3) a causal connection exists between the two." *Id.* Under the indirect method, the third element is replaced by a requirement that the plaintiff show "[s]he was performing [her] job satisfactorily and that [s]he was treated less favorably than a similarly situated employee who did not complain of discrimination." *Argyropoulos v. City of Alton,* 539 F.3d 724, 733 (7th Cir. 2008).

Shott's allegations, if true, clearly satisfy the first element of her retaliation claim—she sued her employer for unlawful discrimination and retaliation. *See* 42 U.S.C. § 2000e–3(a). Where her claim falters, however, is the second element. *See, e.g.*, *Ellsworth v. URS Constr. Servs.*, No. 04 C 3499, 2008 WL 4216351, at *3 (N.D. Ill. Sept. 12, 2008) ("section 1981 claims are not cognizable unless there is a contractual relationship between the parties"). Shott does not claim that Katz is her employer or a decision-maker in a position to initiate an adverse employment action against her. Indeed, she concedes that she and Katz are colleagues, and that their working relationship, like those she has with other Rush physicians, was founded on voluntary collaboration. (Compl. ¶¶ 12, 22.)

Although the complaint does not allege or suggest a contractual agreement requiring Shott and Katz to coauthor research papers[3], this missing allegation is not fatal to Shott's complaint. Nor is the complaint's failure to suggest that Katz "so far controlled the plaintiff's employment relationship that it was appropriate to regard the defendant as the de facto or indirect employer" devastating to the viability of her claim. *See, e.g.*, *Averhart v. Cook County Sheriff,* No. 10 C 7444, 2012 WL 4049434, at *2 (N.D. Ill., Sep. 11, 2012) (quoting *EEOC v.*

---

[3] In her Memorandum in Opposition to the present motion, Shott states that she did in fact have "multiple contractual relationships" with Katz in their working relationship. (Dkt. 24 at 5–6 n.1.) However, the complaint neither states nor suggests that any such relationship existed. Whatever the case, "the complaint may not be amended by the briefs in opposition to a motion to dismiss[.]" *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012).

7

*State of Ill.*, 69 F.3d 167, 169 (7th Cir. 1995)) (dismissing a defendant from a § 1981 retaliation suit because the defendant "was not Plaintiff's employer under Title VII"). This is because "a third party can be liable under § 1981 for *interfering* with the plaintiff's relationship with [her] employer." *See Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 896 (7th Cir. 2015) (citing *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008) and *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 782-83 (7th Cir. 2006).

Shott's retaliation claim ultimately fails because while she tiptoes around the topic, she never explicitly alleges that Katz' refusal to research and publish articles with her has been detrimental to her career or has affected her employment with Rush. Shott alleges that the "[p]ublication of research articles is very important for the career advancement of Rush Medical School faculty members." (Compl. ¶ 22.) She also alleges that Katz will no longer publish articles with her. What she fails to allege, however, is a nexus between Katz' failure to work with her and her career advancement opportunities at Rush. Shott does not claim that her career has stalled due to Katz' conduct; nor does she explicitly allege that she is unable to publish articles with other Rush physicians. Without this sort of factual contention, Shott has failed to plead that Katz "interfered" with her relationship with Rush.[4] *See Sklyarsky*, 777 F.3d at 896. The Court therefore dismisses her complaint without prejudice.

In sum, because Shott does not allege that Katz was her employer, that he was under a contractual obligation to perform research with her, or that he interfered with her employment relationship with Rush, the Court grants Katz' motion to dismiss. *See, e.g.*, .*Jackson v. International Brotherhood of Teamsters, Local Union No. 705*, No. 02 C 2745, 2002

---

[4] Shott's allegations regarding Katz' medical treatment do not support a claim for retaliation. Even if a physician-patient contract existed between the parties, there is no allegation in the complaint that Katz' alleged withholding of medication impacted Shott's employment at Rush whatsoever.

WL 31572544, at *9 (N.D. Ill. Nov. 18, 2002) (finding that the plaintiff "fail[ed] to allege any facts regarding a contract or contractual relationship" with the defendant, and that "without a contract right violation, there is no set of facts under which [the plaintiff] can recover under § 1981").

## CONCLUSION

For the reasons stated above, the Court grants Katz' motion to dismiss. Shott's complaint is dismissed without prejudice. Shott may file an amended complaint, within the contours of this order, by November 16, 2015.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 11/2/2015